[No. A037046. First Dist., Div. Two. Aug. 10, 1987.]

LLOYD M. HAINES, Plaintiff and Respondent, v.
KAY PARRA, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 2 and 3.

COUNSEL

Kay Parra, in pro. per., for Defendant and Appellant.

Roger L. Efremsky and Staley, Jobson & Bernal for Plaintiff and Respondent.

OPINION

KLINE, P. J.—

1.

Kay Parra appeals, in propria persona, from a summary judgment entered in favor of respondent, Lloyd M. Haines, in his action against her for conversion. We affirm in part and reverse in part.

On November 9, 1982, Haines filed a complaint against Parra for conversion, breach of fiduciary duty, conspiracy to commit conversion and money

had and received. Haines alleged that on or about December 14, 1980, Parra maliciously and fraudulently converted $4,000 of his money to her own use and that although he had demanded return of the money, she had failed and refused to return it. Pursuant to Civil Code section 3336,[1] Haines sought to recover the $4,000 plus interest, punitive damages and fair compensation for time and money that he had expended in pursuit of his property.

On August 29, 1985, Haines filed a motion for summary judgment on the ground that the issues presented by his complaint had previously been determined against Parra in a criminal action, *People* v. *Parra* (1985) 165 Cal.App.3d 874 [212 Cal.Rptr. 53], certiorari denied 474 U.S. 1023 [88 L.Ed.2d 561,106 S.Ct. 578], and were conclusive in this civil action by virtue of the doctrine of collateral estoppel. The motion was accompanied by a declaration of Haines stating that he had expended in excess of 100 hours in attempting to recover the $4,000. Haines further stated that he was an attorney and billed his time at $100 per hour and claimed that the reasonable value of the time and effort he had expended in attempting to recover the $4,000 was $10,000. In opposition to the motion for summary judgment, Parra filed her own declaration essentially stating that Haines was a liar. Parra also filed a statement alleging, inter alia, that there was a disputed fact as to whether Haines was entitled to $100 per hour for his time since he had testified in another proceeding that he no longer actively practiced law.

On January 29, 1986, the trial court entered its judgment granting Haines's motion for summary judgment. It awarded him $4,000 plus interest from December 15, 1980, $10,000 for time and money expended in pursuit of the $4,000 and $25,000 in exemplary damages. This timely appeal followed.

Parra was convicted of the crime of grand theft (Pen. Code, § 487, subd. 1) for taking $4,000 from Haines in December 1980. Her conviction was affirmed on appeal by Division Three of this court in a partially published opinion, *People* v. *Parra, supra,* 165 Cal.App.3d 874. The appellate court described the facts giving rise to that conviction as follows: "While on vacation, the Livermore home of Attorney Lloyd Haines was burglarized

---

[1] Civil Code section 3336 provides: "The detriment caused by the wrongful conversion of personal property is presumed to be: [¶]First—The value of the property at the time of the conversion, with the interest from that time, or an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted; and [¶] Second—A fair compensation for the time and money properly expended in pursuit of the property."

and rare coins, jewelry and cash worth about $16,500 were taken. On arrival home, December 9, 1980, Haines called the police and also contacted Parra who had been his longtime client and who had worked for him in various capacities, including house painting. Haines enlisted Parra's help because he believed that Parra might be able to trace the stolen property due to her personal background and contacts in the Livermore area. [¶] Parra arrived at Haines' house the same evening with her son, Jeff. She and her son supplied names of possible suspects to police investigating the crime. At Haines' request, she then left to make her own inquiries. [¶] An hour or so later Parra returned to Haines' house alone. She told him that the stolen property might be in Richmond. Haines gave her a list of the property and $1,800 in cash with which to buy it back. Parra took the money and left. [¶] Later the same night Parra returned the $1,800 stating that she had been unable to find the property but had identified a fence in Richmond to whom the property had been offered. Thereupon, Haines increased the amount for the return of jewelry and coins to $4,000. Parra promised to continue her efforts and recontact Haines later. [¶] Five days later Parra telephoned Haines that she had located the property. Around noon Parra arrived at Haines' house; Haines gave her $4,000 in cash in order to retrieve his property. He did not ask for a receipt because he trusted her. [¶] Since Parra failed to return either the property or the money and did not report back on the result of her mission, Haines, in the following days, made repeated attempts to contact her on the phone and he also paid a personal visit to her home. When all his efforts remained unsuccessful, on December 23, 1980, Haines sent a mailgram to [Parra] urging her to contact him immediately. He also asked his girlfriend, Linda Frey, and his colleague, Hugh Walker, to try to reach [Parra] by phone. [¶] On December 29, 1980, both Frey and Walker tried to call [Parra] by phone without success. That same night Haines received a hand-delivered, typewritten letter from [Parra] in which she accused Haines, Walker and Dr. Jim Danielson, Haines' business associate, of engineering a robbery and battery on her; of trying to cheat her out of wages she earned by painting Haines' home; and she also threatened physical reprisal on Haines, Walker and Danielson for the alleged robbery and beating mastermined by the three. [¶] Haines immediately telephoned Walker and read the letter to him. Thereafter, Walker called [Parra] on the phone. . . . In this telephone conversation, Parra acknowledged receiving the money from Haines with which to buy back the stolen property. . . . [¶] [Parra], testifying on her behalf, denied that she had received any money from Haines; that she had sent the three-page letter to Haines; and/or that she had participated in the . . . conversation with Walker." (*Id.* at pp. 876-878.) At the sentencing in the criminal proceeding, the trial court observed that Parra had committed "willful and deliberate perjury" on the stand.

Parra contends on appeal that 1) collateral estoppel should not apply because grand theft and the torts alleged in this action are "not even close"; 2) Haines should not have been awarded full compensatory damages because the sentencing judge in the criminal case found Haines guilty of "contributory negligence"; 3) Haines was not entitled to $10,000 for his time; and 4) the award of punitive damages was improper. We find merit in the third and fourth of these contentions but reject the first two.

### 2., 3.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### 4.

■■■ Parra's claim that Haines was not entitled to $10,000 as compensation for time and money that he had expended in pursuit of the converted $4,000 has merit.

The sole legal authority advanced by Haines for this element of compensatory damages is Civil Code section 3336. In material part, that statute provides that the detriment caused by the wrongful conversion of personal property includes "[a] fair compensation for the time and money properly expended in pursuit of the property."

The evidence relating to the $10,000 consists of the following statement that appears in Haines's declaration in support of the motion for summary judgment: "I expended well in excess of 100 hours in attempting to procure the return of the $4,000.00. Said time included attempting to contact Kay Parra, filing appropriate documents with the Police Department, various meetings with Police Investigators and the District Attorney in preparation of Defendant's criminal trial, attendance at the trial, efforts expended in the prosecution of this action, including opposing three spurious cross-complaints filed by the Defendant, all of which were dismissed. *Since I am an attorney and my time is billed at $100 an hour, the reasonable value of time and effort expended by me in an attempt to recover the stolen property is the sum of $10,000.00.*" (Italics added.)

This statement and the claims set forth in Haines's brief in this court (e.g., "The compensation to which Plaintiff is entitled is the reasonable value of his time, as an attorney, of 100 hours at $100.00 per hour, plus

---

* See footnote, *ante,* page 1553.

court costs") indicate that the $10,000 in question was sought by Haines and awarded by the court as attorney's fees.

■ As stated in *Russell* v. *United Pacific Ins. Co.* (1963) 214 Cal.App.2d 78 [29 Cal.Rptr. 346], "The general rule is that attorneys' fees are not a proper item of recovery from the adverse party, either as costs, damages or otherwise, unless there is express statutory authority or contractual liability therefor [citations]. Section 3336 of the Civil Code, which sets out the measure of damages in conversion actions, does not expressly provide for attorneys' fees for the converting of property. It has long been held that such fees are not within the rule of damages provided for by that section [citations]." (*Id.* at p. 91; accord, *Viner* v. *Untrecht* (1945) 26 Cal.2d 261, 272 [158 P.2d 3]; *W. R. Bradshaw & Co.* v. *Eggers* (1915) 27 Cal.App. 132 [148 P. 961]; *W. & P. Nicholls* v. *Mapes* (1905) 1 Cal.App. 349 [82 P. 265].) ■ Thus, attorney's fees should not have been awarded Haines even indulging the questionable assumption that all of the "fees" he claimed were incurred "in pursuit of the property" (Civ. Code, § 3336) rather than in pursuit of a criminal conviction.

Upon remand, Haines may be able to demonstrate that he did *properly* expend *some* time and money in pursuit of the converted property for which he is entitled to a fair compensation. ■ "To entitle a party to such compensation the [evidence] should tend to show that money was properly paid out and time properly lost in pursuit of the property, and how much." (*Sherman* v. *Finch* (1886) 71 Cal. 68, 72 [11 P. 847].) Such evidence should be definite and certain. (*Id.* at pp. 71-72.) Expenses "incurred in preparation for litigation and not in pursuit of property" cannot be allowed as damages under Civil Code section 3336. (*Security-First National Bank of Los Angeles* v. *Lutz* (9th Cir. 1963) 322 F.2d 348, 352.) Additionally, any such compensation must be *fair,* i.e., reasonable. ■ To actually incur expenses of $10,000 in pursuit of $4,000 seems to this court to be inherently unreasonable.

## 5.

■ In her opposition to the motion for summary judgment, Parra argued that she was entitled to have her day in court before a jury. This point is well taken with respect to the award of punitive damages.

Civil Code section 3294, subdivision (a) provides that exemplary damages may be recovered "[i]n an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice . . . ." Pursuant to subdivision (c) (3) of that section, " 'Fraud' means an intentional misrepresentation, deceit, or concealment of a materi-

al fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." ▮ "Exemplary damages are properly awardable in an action for conversion, given the required showing of malice, fraud or oppression. [Citations.]" (*Haigler* v. *Donnelly* (1941) 18 Cal.2d 674, 681 [117 P.2d 331]; accord, *Cyrus* v. *Haveson* (1976) 65 Cal.App.3d 306, 316-317 [135 Cal.Rptr. 246].)

▮ It was established in the criminal case that Parra had fraudulently taken Haines's money by intentionally misrepresenting that she would buy his stolen property from a fence.[2] This would support an award of exemplary damages under Civil Code section 3294. The decision whether to award such damages was, however, one for a jury rather than the trial court (absent a waiver of the right to trial by jury, which did not occur in this case).

▮ As Justice Traynor explained in *Brewer* v. *Second Baptist Church* (1948) 32 Cal.2d 791 [197 P.2d 713], "'A plaintiff, upon establishing his case, is always entitled of right to compensatory damages. But even after establishing a case where punitive damages are permissible, he is never *entitled* to them. The granting or withholding of the award of punitive damages is wholly within the control of the jury . . . . Upon the clearest proof of malice in fact, it is still the exclusive province of the jury to say whether or not punitive damages shall be awarded. A plaintiff is entitled to such damages only after the jury, in the exercise of its untrammeled discretion, has made the award.'" (*Id*. at p. 801, italics added; accord, *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 821 [169 Cal.Rptr. 691, 620 P.2d 141], app. dism., cert. den. (1980) 445 U.S. 912 [63 L.Ed.2d 597, 100 S.Ct. 1271]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 867, p. 3155; Borowsky, *Punitive Damages in California: The Integrity of Jury Verdicts* (1983) 17 U.S.F. L.Rev. 147, 152 (hereafter Borowsky); Ellis, *Fairness and Efficiency in the Law of Punitive Damages* (1982) 56 So.Cal.L.Rev. 1, 37-39.) "An examination of judicial opinions and statutory law reveals that the jury's power to award punitive damages proceeds from its ability to speak for the community. As a group, the jury is in the best possible position to function as the community's conscience. A jury's reactions of shock and outrage presumably mirror those of the community as a whole. Thus when the jury decides to make a punitive award, it is expressing society's disapproval; and when it sets the amount of the award, it

---

[2] A person cannot be convicted of grand theft by false pretense (obviously the type of grand theft of which Parra was convicted) unless it is proved that he or she "made or caused to be made to another person . . . a promise without an intention to perform it or a false representation of . . . fact . . . ." and that the false representation or promise was made with the specific intent to defraud. (CALJIC No. 14.10 (4th ed. 1979).)

measures society's outrage and determines the degree of punishment that society believes will deter the defendant and others like him." (Borowsky, *supra,* at pp. 152-153.)

Thus it was error for the court below to award punitive damages on Haines's motion for summary judgment. Parra was entitled to have a jury determine whether to award punitive damages and the amount of any punitive award made.

### 6.

The judgment is affirmed insofar as it awards compensatory damages for the value of the property converted plus interest. The judgment is otherwise reversed and the cause remanded to the trial court for further proceedings consistent with the views expressed in this opinion.

Parra shall recover her costs on appeal.

Rouse, J., and Benson, J., concurred.