HARWOOD STATE BANK,
Plaintiff and Appellee,

v.

Frank CHARON, Defendant
and Appellant.

**Civ. No. 900086.**

Supreme Court of North Dakota.

Feb. 22, 1991.

C. Charles Chinquist, Fargo, for defendant and appellant.

Roger J. Minch of Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, for plaintiff and appellee.

LEVINE, Justice.

Frank Charon appeals from a judgment against him awarding damages to Harwood

State Bank for conversion. We affirm in part, reverse in part and remand.

Charon owns a commercial building in Fargo, which he leased to Terry Sexton. Sexton operated a business there, rebuilding auto parts. Harwood State Bank (the Bank) had a purchase money security interest in Sexton's equipment. During the fall of 1987, Sexton ceased doing business in Charon's building but left some of the equipment on the premises. Sexton apparently did not continue paying rent and during July of 1988, Charon prevented Sexton from removing the equipment from the building.

Sexton was in default on his loan from the Bank. Sexton gave the Bank a bill of sale for the secured personal property on October 11, 1988. Among the equipment transferred to the Bank were a milling machine, lathe and welding table. In a November 29, 1988, letter to Dwight Cuffe, Charon's lawyer, the Bank notified Charon of its interest in the equipment. Cuffe gave Charon a copy of the Bank's letter within a few days of its receipt.

On December 9, Charon sold the milling machine, lathe and welding table to Larry Skalet. Cuffe prepared a written agreement between Charon and Skalet which stated the sale of the equipment was conditioned upon the Bank and Sexton's consent. Charon received a $1,000 check from Skalet, which he did not cash. Skalet took possession of the milling machine, the lathe and the welding table on December 12. The Bank learned of the sale, objected to the sale, and renewed its demand that it be allowed to take possession of all of the equipment covered by the bill of sale.

On December 15, the Bank filed its complaint, alleging conversion and moved for a temporary restraining order, preventing Charon's disposal of the equipment covered by the bill of sale. The court granted the restraining order on December 15, and after an order-to-show-cause hearing, issued a preliminary injunction. Charon answered the complaint and filed a counterclaim, alleging that the Bank conspired with Sexton to deny Charon rent on his property, and that the Bank's lawsuit for conversion

was spurious. The Bank's reply stated that Charon's counterclaim was frivolous and requested costs and attorney's fees. The court granted the Bank's motion for partial summary judgment, stating the Bank was the owner of the personal property and that it should be given peaceful possession of all the property listed on the bill of sale. The court reserved the issue of Charon's lien rights in any property not given to the Bank.

After a bench trial, the court found that Charon had converted the three pieces of equipment and that their value at the time of conversion was $7,600. After a separate hearing on the issues of exemplary damages and attorney's fees, the court awarded the Bank $7,600 plus interest as actual damages, $500 for attorney's fees, and $1,000 for exemplary damages. Charon appeals, challenging the finding of conversion, the proof of value for the converted property, the imposition of punitive damages, and the assessment of attorney's fees.

■■■ Charon argues that he did not convert the Bank's property because he acted on advice of counsel and because the sale to Skalet was "conditional." Conversion is the wrongful exercise of dominion over the personal property of another in a manner inconsistent with, or in defiance of, the owner's rights. *Union State Bank v. Woell*, 434 N.W.2d 712 (N.D.1989). Conversion does not require a bad intention on the converter's part; it only requires an intent to exercise control or interfere with an owner's use to an actionable degree. *Dairy Dept. v. Harvey Cheese, Inc.*, 278 N.W.2d 137 (N.D.1979). Where good faith is a defense, as in an action requiring willful or malicious acts, advice of counsel is relevant. *See A & A Metal Bldg. v. I–S, Inc.*, 274 N.W.2d 183 (N.D.1978) [conclusion of no tortious abuse of process supported by finding party acted on advice of counsel]. The mistaken advice of Charon's counsel, suggesting that Charon might have a lien right, does not protect Charon because he did intend to act. *See McGlynn v. Schultz*, 90 N.J.Super. 505, 218 A.2d 408 (1966) [elements of good faith, wrongful

intent or negligence do not play a part in an action based on conversion].

Charon's argument respecting the "conditional" sale is essentially that he did not act in a manner inconsistent with the Bank's rights. The court found, however, that Charon delivered the equipment to Skalet. Findings of fact will be set aside only if clearly erroneous. NDRCivP 52(a). A finding of fact is clearly erroneous when, although there is some evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Peterson v. Front Page, Inc.*, 462 N.W.2d 157 (N.D.1990). Charon does not deny that he gave possession of the milling machine, the lathe and the welding table to Skalet, and not to the Bank. Even though Charon attempted to acknowledge that the Bank had some interest in the property by making the sale "conditional" upon the Bank's approval, Charon refused the Bank's demand that it be given the equipment, and Charon gave possession of the property to Skalet. These are acts of dominion inconsistent with the Bank's interest. The trial court's finding that Charon converted the property is, therefore, not clearly erroneous.

Charon argues that the Bank did not meet its burden of proving general damages. Section 32–03–23, NDCC, sets out alternative bases for valuing converted property: (1) the value of the property with interest from the time of its conversion, or (2) the highest market value of the property at any time between the conversion and the verdict, but without interest. *See also National Bank v. International Harvester Co.*, 421 N.W.2d 799 (N.D.1988). The injured party has the option of electing between these alternatives. *Id.*

The Bank offered the testimony of the former owner, Sexton, to establish the value of the property at the time of the conversion. Sexton testified that he paid $7,600 for the three used pieces of equipment Charon sold to Skalet, and that their value remained the same at the time of the conversion. Charon did not offer an alter-nate valuation at the time of conversion, although he offered the price Skalet paid, $1,000, as evidence of market price. Charon now argues that it was illogical for the court to accept a valuation that shows no loss of value for the four year's usage. The owner of personal property is fully competent to testify as to the property's value. *Farmers State Bank v. Thompson*, 372 N.W.2d 862 (N.D.1985). The Bank had the right to choose the value of the property at the time of conversion as its measure of damages; Charon did not challenge the testimony of the Bank's witness. The value chosen by the court was within the range of evidence. *See Behm v. Behm*, 427 N.W.2d 332 (N.D.1988). Reviewing this record, we are not left with a definite conviction that the court clearly erred in valuing the property.

Charon argues that the court should not have awarded the Bank exemplary damages because the court "abused its discretion in finding [Charon's] claims of possession and actions were oppressive...." Section 32–03–07, NDCC, authorizes the court to give damages to punish a defendant for oppressive conduct. "Oppression," as used in the statute, means "subjecting a person to cruel and unjust hardship in conscious disregard of his rights." *Napoleon Livestock Auction, Inc. v. Rohrich*, 406 N.W.2d 346 (N.D. 1987), *quoting Richardson v. Employers Liability Assur. Corp.*, 25 Cal.App.3d 232, 102 Cal.Rptr. 547 (1972). The existence of oppression is a question of fact. *See Bismarck Realty Co. v. Folden*, 354 N.W.2d 636 (N.D.1984). The record shows that Charon frustrated Sexton and the Bank's repeated efforts to recover possession of the converted equipment, despite the fact that Charon had no legal right. While Charon may have been acting with advice of counsel, and while he survived a motion for summary judgment on his claim of lien rights, the trial court ultimately found that Charon had no right to keep the property from the Bank. Charon repeatedly denied the owners possession of their property

over the course of several months. We are not left with a definite conviction that the trial court's finding of oppression was mistaken. Therefore, we affirm the exemplary damages award.

 The court awarded the Bank $500 in attorney's fees under section 32–03–23, NDCC.[1] The statute allows "a fair compensation for the time and money properly expended in pursuit of the property." The court awarded the attorney's fees as "incurred in the pursuit of [the Bank's] property." Generally, attorney's fees are not allowable to a successful litigant unless expressly authorized by statute or by agreement of the parties. *See, e.g., Olson v. Fraase*, 421 N.W.2d 820 (N.D.1988). *See also Hoge v. Burleigh County Water M'g't Dist.*, 311 N.W.2d 23 (N.D.1981) [attorney's fees may be authorized expressly or impliedly in an indemnity agreement]. There was no agreement between the Bank and Charon, so the question is whether the statute authorizes payment of attorney's fees. We hold it does not for two reasons.

First, the phrase "time and money properly expended in pursuit of the property" is not an express authorization for attorney's fees. Such an express authorization can be found in other statutes. For instance, section 28–26–31, NDCC, imposes upon a bad-faith pleader the duty to pay "all expenses, actually incurred by the other party by reason of the untrue pleading, including a reasonable attorney's fee...." *See also* NDCC § 28–26–01(2) [costs, including attorney's fee, assessable for frivolous claims].

 Second, section 32–03–23, NDCC, and California Civil Code § 3336[2] have as their common source the Field Civil Code.[3] We, therefore, view as persuasive California's interpretation of section 3336, the counterpart to section 32–03–23, NDCC. *Cf. Estate of Zins v. Zins*, 420 N.W.2d 729 (N.D.1988); *Schneider v. S.L.M.*, 347 N.W.2d 126 (N.D.1984).

California courts do not allow attorney fees as an element of damages under section 3336. The California courts say the purpose of the second element of damages for conversion—time spent pursuing the property—is meant to compensate for time spent to recover the actual property. *Haines v. Parra*, 193 Cal.App.3d 1553, 239 Cal.Rptr. 178 (1987); *W.P. Nicholls v. Mapes*, 1 Cal.App. 349, 82 P. 265 (1905). "When Civil Code section 3336 was enacted in 1872, the legislature ... contemplated compensation for time spent searching the countryside in search of misappropriated livestock or other chattels." *Gladstone v. Hillel*, 203 Cal.App.3d 977, 250 Cal.Rptr. 372 (1988). Accordingly, courts have dis-

---

**1.** Section 32–03–23, NDCC, provides:

"The detriment caused by the wrongful conversion of personal property is presumed to be:

"1. The value of the property at the time of the conversion, with the interest from that time; or

"2. When the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict, without interest, at the option of the injured party; and

"3. A fair compensation for the time and money properly expended in pursuit of the property."

**2.** Section 3336 of the California Code provides:

"The detriment caused by the wrongful conversion of personal property is presumed to be:

"First—The value of the property at the time of the conversion, with the interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted; and

"Second—A fair compensation for the time and money properly expended in pursuit of the property."

**3.** The North Dakota Century Code source note for section 32–03–23 states that statute was derived from California Civil Code § 3336. That statement is wrong. The statute was first enacted by the Dakota Territory Legislative Assembly in 1866. The source for that enactment was the Field Civil Code. *See J.P. Furlong Ent., Inc. v. Sun Explor. & Prod. Co.*, 423 N.W.2d 130, 135 n. 15 (N.D.1988). California enacted the Field Civil Code in 1872. *Id.* The clause we interpret here—time spent in pursuit of the property—is common to the Dakota and California enactments and derives from the Field Civil Code.

tinguished between time spent in pursuit of converted property, and time spent in pursuit of litigation. Time and money spent in an effort to recover converted property have included hauling charges, temporary storage charges and travel expenses incurred while searching for the property. *Lothrop v. Golden*, 57 P. 394 (Cal.1899). Time spent in pursuit of litigation has included attorney's fees for the preparation of a conversion action, and furthering the criminal prosecution of the converter. *Haines v. Parra, supra.* It is possible that time and money spent could serve both purposes, and some expenses connected with litigation may be compensated if a purpose related to the recovery of the actual property is demonstrated. *Gladstone, supra.* For instance, the *Gladstone* opinion suggests that attorney time spent preparing lists of missing property, inspecting inventories, meeting with the converter, contacting law enforcement officers, and making inquiries regarding courses of action appropriate to recovering the converted property could have a demonstrable purpose independent of litigation. Here, the Bank merely submitted a bill for attorney's fees, and no effort was made to demonstrate a purpose other than the recovery of damages. Consequently, we reverse the award of attorney's fees.

We therefore affirm in part, reverse in part, and remand.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.