2003 ND 48

Shaylee AMYOTTE, a minor child, by and through her parent, Bernice AMYOTTE, Plaintiff and Appellee,

v.

ROLETTE COUNTY HOUSING AUTHORITY, Defendant and Appellant,

and

Timothy Shirk, Individually and as Apartment Complex Manager for Rolette County Housing Authority, Defendant.

No. 20020191.

Supreme Court of North Dakota.

March 26, 2003.

Debra L. Hoffarth, Pringle & Herigstad, P.C., Minot, ND, for plaintiff and appellee.

Richard H. McGee II, McGee, Hankla, Backes & Dobrovolny, Minot, ND, for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] The Rolette County Housing Authority ("Housing Authority") appealed from a judgment awarding damages to Shaylee Amyotte ("Amyotte") for injuries she incurred when she was clawed by a cat on rental property owned by the Housing Authority. We hold the trial court did not correctly instruct the jury on the landlord's duty to the plaintiff in this case, and the evidence, as a matter of law, does not establish the Housing Authority was negli-

gent or breached a duty to Amyotte. We therefore reverse and remand for entry of judgment in favor of the Housing Authority.

## I

[¶ 2]   Amyotte, a minor child, and her mother, Bernice Amyotte, are tenants at a housing complex in Rolette owned and managed by the Housing Authority.   On July 14, 1999, Amyotte was attacked and injured by a cat while playing outside an apartment complex owned by the Housing Authority.   Earlier that day, a tenant informed the apartment manager the cat was in one of the building hallways.   The manager removed the cat from the building and placed it outside.   The cat injured Amyotte after it was provoked by other children.   The incident occurred on Housing Authority property located several blocks from the complex where the manager had removed the cat that day.

[¶ 3]   Amyotte, by and through her mother, sued the Housing Authority for damages caused by the incident.   At trial, Amyotte argued the Housing Authority violated its "no pets" policy by allowing the cat to be on the premises and also argued the Housing Authority was negligent in failing to maintain safe premises for its tenants.   The Housing Authority argued it was not negligent in failing to remove the cat from the premises, because it had no reason to know, prior to the cat's attack upon Amyotte, that the cat was dangerous or presented a potential threat of harm to anyone.   The jury returned a verdict awarding Amyotte damages of $7,404.64, and judgment was entered for her in accordance with the jury verdict.

[¶ 4]   The trial court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06.   The appeal was timely under N.D.R.App.P. 4(a).   This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

## II

### A

[¶ 5]   On appeal, the Housing Authority contends the trial court erred in not correctly instructing the jury about a landlord's duty to third persons for injuries caused by an animal on the landlord's premises.   Jury instructions must fairly inform the jury of the applicable law. *Gowin v. Trangsrud*, 1997 ND 226, ¶ 9, 571 N.W.2d 824.   On appeal, we review whether, as a whole, the jury instructions fairly and adequately advised the jury.   *Id.* While a trial court may properly refuse a requested instruction not applicable to the evidence, a party is entitled to an instruction on a valid applicable theory if there is some evidence to support it.   *Id.*

[¶ 6]   During the trial, the Housing Authority requested the court to instruct the jury that the Housing Authority could be held liable only if it knew the cat that injured Amyotte was a dangerous and vicious animal and either willfully permitted the cat to run at large or failed to exercise ordinary care to keep the cat confined so that it would not injure someone.   The trial court refused to give the requested or similar instructions to the jury.   Instead, the trial court gave an instruction on ordinary negligence and instructed the jury that an owner or lessor of premises "must act as a reasonable person in maintaining the premises in a reasonable, safe condition in view of all the circumstances."

[¶ 7]   Whether a defendant owes a plaintiff a duty of care is a preliminary question of law for the court to determine, but if the existence of a duty depends on resolving factual issues, the trier of fact must ascertain the facts.   *Doan v. City of*

*Bismarck*, 2001 ND 152, ¶ 25, 632 N.W.2d 815.

■ [¶ 8] In *Twogood v. Wentz*, 2001 ND 167, ¶ 2, 634 N.W.2d 514, the plaintiff sued a landlord for injuries she sustained when she was bitten on the leg by a tenant's dog while the plaintiff was on the leased premises performing her duties as a utilities meter reader. This Court first explained the general requirements for the plaintiff to prove her negligence claim:

> To establish her cause of action for negligence, Twogood must show the landlords had a duty to protect her from injury. See *Rogstad v. Dakota Gasification Co.*, 2001 ND 54, ¶ 12, 623 N.W.2d 382. "We have stated negligence consists of a duty on the part of an allegedly negligent party to protect the plaintiff from injury, a failure to discharge the duty, and a resulting injury proximately caused by the breach of the duty." *Id.* If a duty on the part of the landlords does not exist, neither does negligence.

*Id.* at ¶ 12. In *Twogood*, this Court, for the first time, dealt with the issue of a landlord's liability to a third person for injury caused by a tenant's dog, and concluded:

> [T]he general rule is that a landlord is not liable to a third person for an attack by a tenant's dog unless the landlord had control of the premises and knowledge of the vicious propensities of the dog. [The defendants] have denied both control and knowledge, and the record is devoid of any facts to the contrary. Applying the rule to the facts in this case, the trial court correctly determined the landlords owed no duty to Twogood.

*Id.* at ¶ 20 (citations omitted). The rule this Court adopted in *Twogood* comports with the general rule that knowledge of an animal's presence and dangerous tendencies are a prerequisite to landlord liability.

Danny R. Veilleux, Annotation, *Landlord's Liability to Third Person for Injury Resulting from Attack on Leased Premises by Dangerous or Vicious Animal Kept by Tenant*, 87 A.L.R.4th 1004, 1012 § 2[a] (1991). The general rule regarding an owner's liability for injury caused by an animal not normally dangerous, such as a cat, is summarized by Cheryl M. Bailey, Annotation, *Liability for Injuries Caused by Cat*, 68 A.L.R.4th 823, 829 § 2[a] (1989):

> Under the common law, the owner or keeper of a domesticated animal which is not naturally dangerous, such as a cat, is subject to liability for harm caused by the animal only if he knows or has reason to know that the particular animal is abnormally dangerous.... If, therefore, a cat of a peaceable disposition suddenly and unexpectedly inflicts an injury, its owner or keeper is not liable under the common law to the person injured, assuming that the owner or keeper was exercising due care at the time of the incident.

■ [¶ 9] We conclude the jury instructions did not fairly inform the jury of the applicable law in this case. The court correctly instructed the jury that an owner or lessor of premises must act as a reasonable person in maintaining the premises in a safe condition. N.D.C.C. § 47–16–13.1(1). However, the court erred in refusing to additionally instruct the jury, in accordance with the law set forth in the *Twogood* decision, that a landlord cannot be held liable for injuries sustained by a person on its premises as a result of an animal attack unless the landlord had knowledge of, or reason to know, the dangerous or vicious propensities of the animal. Because the trial court's error in not properly instructing the jury affected the substantial rights of the parties, the error warrants a reversal of the judgment.

*Gowin v. Trangsrud,* 1997 ND 226, ¶ 9, 571 N.W.2d 824.

B

[¶ 10] The leases entered between the Housing Authority and its tenants contained a "no pets" clause prohibiting the tenants from keeping animals on the premises. Amyotte asserts the no-pet clauses in the tenant contracts imposed a duty upon the Housing Authority, toward other tenants and third parties, to keep all animals off the premises. Amyotte contends that under these circumstances, the general rule that a landlord can be held liable for injuries caused by an animal on the premises only if the landlord knew or had reason to know of the animal's dangerous propensities does not apply in this case.

[¶ 11] Although a no-pets clause in a lease gives the landlord some control for removing animals from the premises, a duty to protect others from harm by an animal on the premises arises only when the landlord knows that the animal is dangerous and presents an unreasonable risk of harm. *See Matthews v. Amberwood,* 351 Md. 544, 719 A.2d 119, 131 (1998); *see also Braun v. York Properties, Inc.,* 230 Mich.App. 138, 583 N.W.2d 503, 508 (1998) (pet-size restrictions in lease did not impose duty upon landlord to protect others from harm caused by pet exceeding the size restrictions); *Carter v. Metro North Associates,* 255 A.D.2d 251, 680 N.Y.S.2d 239, 241 (1998) (landlord's failure to exercise "no pets" clause in lease not proximate cause of injury inflicted by tenant's pet on the premises).

[¶ 12] Amyotte relies upon the decision of the Alaska Supreme Court in *Alaskan Village, Inc. v. Smalley,* 720 P.2d 945, 948 (Alaska 1986). The facts in that case are distinguishable from the facts here, and render its conclusion inapplicable. In *Smalley,* the owner of a mobile home park was sued for damages when a six-year-old child was mauled and severely injured by a tenant's pit bull after it escaped from its pen in the tenant's yard and attacked the child. The mobile park lease agreement included a clause that prohibited tenants from keeping "vicious dogs" on the premises. The Alaska Supreme Court concluded the clause in the lease existed to benefit not only the landlord but also the safety of other residents in the trailer park. The court noted that the manager of the trailer park had admitted the purpose of the rule was to protect other tenants, and it held the landlord had a duty to exercise reasonable care to enforce its rules and regulations when there was ample evidence it had actual knowledge of prior incidents of viciousness exhibited by the offending pit bull and it was clearly foreseeable the animal might harm someone. Unlike the lease agreements in *Smalley,* which contained a "no vicious dogs" clause, the Housing Authority's leases here contained only a general no-pets clause. There was no evidence the clause was intended to benefit third parties from the dangers of an animal attack.

[¶ 13] The decision in *Amberwood,* 719 A.2d at 125–132, involved a no-pets clause in a lease similar to the one involved in this case. The Maryland Court of Appeals concluded such a clause does not, in itself, impose upon a landlord a duty to prevent harm by animals to others:

> The tenant Morton did not have exclusive control over the leased premises because the lease gave the landlord a degree of control. The landlord retained control over the presence of a dog in the leased premises by virtue of the "no pets" clause in the lease. The lease plainly stated that breach of the "no pets" clause was a "default of the lease."
>
> . . . .

We do not hold that a landlord's retention in the lease of some control over particular matters in the leased premises is, standing alone, a sufficient basis to impose a duty upon the landlord which is owed to a guest on the premises.

. . . .

Under the present circumstances, however, where a landlord retained control over the matter of animals in the tenant's apartment, coupled with the knowledge of past vicious behavior by the animal, the extremely dangerous nature of pit bull dogs, and the foreseeability of harm to persons and property in the apartment complex, the jury was justified in finding that the landlord had a duty to the plaintiffs and that the duty was breached.

[¶ 14]   There is no evidence in this case suggesting that the no-pet clauses in the leases were intended to protect any persons from harm by animals on the premises.   Furthermore, there is no evidence to establish that any tenant violated the no-pets clause.   The parties refer to the cat that injured Amyotte as a "stray," and the evidence does not establish ownership of the cat.   Under these circumstances, we conclude the no-pet clauses in the lease agreements did not impose a duty upon the Housing Authority to protect Amyotte or others from animals on the premises.   The presence of the "no-pets" clause in the leases did not vitiate the general rule that a landlord cannot be held liable for injury caused by animals on the leased premises unless the landlord knew or had reason to know of the animal's dangerous propensities.

### III

[¶ 15]   At the close of the plaintiff's case, and again after entry of judgment in favor of the plaintiff, the Housing Authority moved for and was denied judgment as a matter of law under N.D.R.Civ.P. 50.   On appeal, the Housing Authority contends there is insufficient evidence to support the verdict and consequently the court erred in denying the Rule 50 motion for judgment as a matter of law.   Rule 50(a)(1), N.D.R.Civ.P., provides:

(a) Judgment as a Matter of Law.

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim, or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

In *Symington v. Mayo*, 1999 ND 48, ¶ 4, 590 N.W.2d 450, we explained the standards for deciding a motion brought under N.D.R.Civ.P. 50, and for reviewing on appeal the trial court's decision:

The trial court's decision on a motion brought under N.D.R.Civ.P. 50 to deny or grant judgment as a matter of law is based upon whether the evidence, when viewed in the light most favorable to the party against whom the motion is made, leads to but one conclusion as to the verdict about which there can be no reasonable difference of opinion.   In considering this motion, the trial court must apply a rigorous standard with a view toward preserving a jury verdict, and so must we in our review on appeal.   In determining if the evidence is sufficient to create an issue of fact, the trial court must view the evidence in the light most favorable to the non-moving party, and must accept the truth of the evidence presented by the non-moving party and the truth of all reasonable infer-

ences from that evidence which support the verdict. The trial court's decision on a motion for judgment as a matter of law is fully reviewable on appeal.

(Citations omitted.) In reviewing a district court ruling on a motion for judgment as a matter of law, we examine the sufficiency of the evidence by viewing the evidence supporting the jury verdict as the truth. *Perry v. Reinke*, 1997 ND 213, ¶ 13, 570 N.W.2d 224. This Court then applies the standard for a Rule 50 judgment as a matter of law, which is whether the evidence favoring the verdict is so insufficient, reasonable minds could reach only one conclusion as to the verdict. *Id.*

[¶ 16] There is no record evidence suggesting the Housing Authority knew or had reason to know that the cat which injured Amyotte was dangerous or had vicious propensities. There is no evidence the cat had ever attacked anyone previously. To the contrary, the undisputed evidence establishes that many children played with the cat, often in a rough manner, but prior to the cat turning upon and injuring Amyotte, the cat had never attacked or injured a child or other person and had never displayed a proclivity for hostility or for causing harm to anyone. An issue of fact becomes a question of law if reasonable persons could reach only one conclusion from the evidence. *Sternberger v. City of Williston*, 556 N.W.2d 288, 290 (N.D.1996). On the entire evidence in this case, we conclude, as a matter of law, the Housing Authority did not have knowledge or reason to know the cat that injured Amyotte was dangerous or had vicious propensities. Consequently, we conclude Amyotte failed to prove the Housing Authority owed her a duty to protect her from harm from the cat. We hold, therefore, the trial court erred in denying the Housing Authority's motion for judgment, as a matter of law, under Rule 50.

## IV

[¶ 17] Amyotte filed a motion requesting attorney fees on appeal, under N.D.C.C. § 47–16–13.6, authorizing the court to award reasonable attorney fees to the prevailing party who sues a landlord for, among other things, not maintaining safe premises as required under N.D.C.C. § 47–16–13.1(c). In view of our reversal of the jury verdict, we conclude Amyotte is not entitled to attorney fees on appeal.

## V

[¶ 18] We hold the trial court failed to properly instruct the jury on the law, and we further hold the evidence is insufficient, as a matter of law, to establish the Housing Authority owed a duty to Amyotte that was breached in this case. We therefore reverse the judgment and remand for entry of judgment in favor of the Housing Authority.

[¶ 19] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.