2016 ND 142

Dean BJORNEBY, Keith Bjorneby, Chris Bjorneby, and Josh Bjorneby, individually, and collectively d/b/a Lone Wolf Farms, Plaintiffs and Appellees

v.

NODAK MUTUAL INSURANCE COMPANY and Bryan Hurst, Defendants and Appellants.

No. 20150255.

Supreme Court of North Dakota.

July 7, 2016.

Paul R. Oppegard, Moorhead, MN, for plaintiffs and appellees.

Michael J. Morley, Grand Forks, ND, for defendants and appellants.

KAPSNER, Justice.

[¶ 1]  Nodak Mutual Insurance Company ("Nodak Mutual") and Bryan Hurst (together referred to as "Nodak") appeal from the district court's denial of their motion for judgment as a matter of law and their alternative motion for a new trial. We affirm.

## I

[¶ 2]  The Bjornebys are farmers. They insured their farming operation with a Nodak Mutual insurance policy. Hurst was their insurance agent. During potato harvest, a fire started in the break room of the Bjornebys' potato washing facility. The fire spread and caused substantial damage. The Bjornebys filed an insurance claim, and Nodak Mutual covered a number of losses. Nodak Mutual, however, refused to cover certain potatoes because the Bjornebys reported the potatoes after they became aware of the fire. The Bjornebys sued alleging Nodak Mutual breached their insurance contract and Hurst was negligent. A jury returned a general verdict in the Bjornebys' favor; the verdict did not allocate liability between Nodak Mutual and Hurst. Nodak Mutual and Hurst moved for judgment as a matter of law or, in the alternative, a new trial. The district court denied their motions. Both Nodak Mutual and Hurst appeal.

[¶ 3]  Hurst had been the Bjornebys' insurance agent for about four years prior to the fire. He testified he met with the Bjornebys every year and gave them advice on insuring their farming operation. The content of the conversations Hurst had with the Bjornebys during these meetings was disputed at trial. Hurst claimed he had told the Bjornebys about a potato insuring method—bin capacity insurance—that would insure the full capacity of their potato storage facilities during harvest and subsequently prorate premiums when the actual number of potatoes became available. Chris Bjorneby claimed Hurst never mentioned this option; Bjorneby claimed he instructed Hurst to insure all of their harvested potatoes at all times. At the time of the fire, and prior to it, the Bjornebys were insuring their potatoes by periodically reporting the harvested potato count to Hurst. As potatoes were harvested and placed in storage, Chris Bjorneby would call Hurst and update him on the potato count. Hurst would then report the new count to Nodak Mutual. In mid-September 2011, Chris Bjorneby called Hurst and reported the potato count. The fire started on October 7, 2011.

[¶ 4]  Chris Bjorneby testified that when he first saw the break room fire, he did not think it would result in damage to the potatoes. Nonetheless, he quickly called Hurst and reported additional potatoes had been stored since their last call. The content of their brief conversation was disputed at trial. Chris Bjorneby claims Hurst told him the additional potatoes would be covered by Nodak Mutual. Hurst claimed he made no such assertion.

[¶ 5]  Soon after they hung up, the local fire department decided to ventilate the

fire; it then became uncontrollable. The washing facility, where the fire started, was in a building separate from the potato storehouse. However, the two buildings were connected by underground water flumes used to move the potatoes from one building to another. The flumes had seals, and the Bjornebys believed they were sealed while the fire was occurring. The fire was ultimately brought under control, but subsequent flare-ups occurred days after it had started. The additional potatoes Chris Bjorneby had reported on the date of the fire were ruined by smoke. It is unclear when they became unusable.

## II

[¶ 6] Nodak Mutual and Hurst argue the district court erred when it denied their motion for judgment as a matter of law. They claim that, under the known loss doctrine, the potatoes Bjorneby reported on the day of the fire were uninsurable as a matter of law. They also assert Hurst did not breach his duty of care, as a matter of law, and thus he could not be found negligent.

[¶ 7] A party moving for judgment as a matter of law "is, in effect, claiming that the evidence is insufficient to create a question of fact for the jury. And whether or not the evidence is sufficient to create a question of fact for the jury is itself a question of law to be decided by the trial court." *Okken v. Okken*, 325 N.W.2d 264, 267 (N.D.1982). If the trial court determines the evidence does not raise a factual issue to be decided by the jury, the court may grant judgment as a matter of law. *Id.*

The trial court's decision on a motion brought under N.D.R.Civ.P. 50 to deny or grant judgment as a matter of law is based upon whether the evidence, when viewed in the light most favorable to the party against whom the motion is made,

leads to but one conclusion as to the verdict about which there can be no reasonable difference of opinion. In considering this motion, the trial court must apply a rigorous standard with a view toward preserving a jury verdict, and so must we in our review on appeal. In determining if the evidence is sufficient to create an issue of fact, the trial court must view the evidence in the light most favorable to the non-moving party, and must accept the truth of the evidence presented by the non-moving party and the truth of all reasonable inferences from that evidence which support the verdict. The trial court's decision on a motion for judgment as a matter of law is fully reviewable on appeal.

*Minto Grain, LLC v. Tibert*, 2009 ND 213, ¶ 7, 776 N.W.2d 549 (quoting *Amyotte v. Rolette Cnty. Hous. Auth.*, 2003 ND 48, ¶ 15, 658 N.W.2d 324). To determine whether the trial court erred in granting or denying a motion for judgment as a matter of law, "this Court examines the trial record and applies the same standard as the district court was required to apply initially." *Id.* at ¶¶ 8–9 (noting prior cases have erroneously described the standard as an abuse of discretion analysis).

### A

[¶ 8] Nodak argues the additional potatoes were uninsurable as a matter of law because Chris Bjorneby was aware of the fire when he reported the potatoes to Hurst. Thus, Nodak contends the district court erred when it denied their motion for judgment as a matter of law because the known loss doctrine precluded coverage of the potatoes. Whether the known loss doctrine applies to a case is a question of fact. *Public Util. Dist. No. 1 v. International Ins. Co.*, 124 Wash.2d 789, 881 P.2d 1020, 1030 (1994). The jury was instructed on the known loss doctrine:

Insurance cannot be issued for a known loss. Once the loss has occurred, there is no longer any "risk." Thus, if an insured has actual knowledge that a loss has occurred or is occurring, or that the loss is substantially certain to occur, there can be no insurance coverage.

*See Crawfordsville Square, LLC v. Monroe Guar. Ins. Co.*, 906 N.E.2d 934, 937–38 (Ind.App.2009) ("if an insured has actual knowledge that a loss has occurred, is occurring, or is substantially certain to occur on or before the effective date of the policy, the known loss doctrine will bar coverage").

■■■ [¶ 9]  Nodak asserts the instruction was a misstatement of the law. Nodak argues N.D.C.C. § 26.1–29–11 codifies the known loss doctrine and "expressly bars the purchase of insurance coverage when a 'known event' has occurred or is occurring when the insurance is requested." Section 26.1–29–11, N.D.C.C., states:

> Any contingent or unknown event, whether past or future, which may damnify a person having an insurable interest or create a liability against the person may be insured against, subject to this title. . . .

Neither Nodak Mutual nor Hurst objected to the district court's known loss instruction. Nor did they raise the argument that the instruction should have included language from N.D.C.C. § 26.1–29–11. "Under N.D.R.Civ.P. 51(c), . . . to preserve for appellate review an alleged error regarding instructions to the jury, counsel 'has the burden of objecting not only to parts included in the proposed instructions but also to omissions in the proposed instructions.'" *Sollin v. Wangler*, 2001 ND 96, ¶ 9, 627 N.W.2d 159 (quoting *Leingang v. George*, 1999 ND 32, ¶ 16, 589 N.W.2d 585). When the parties fail to object, the instruction generally becomes the law of the case. *Bakke v. D & A Landscaping Co.*, 2012 ND 170, ¶ 14, 820 N.W.2d 357 (citing *Wilson v. Gen. Motors Corp.*, 311 N.W.2d 10, 14 (N.D.1981)). Because Nodak did not object to the instruction in this case, its argument has not been preserved. The instruction, as given, became the law of the case.

■■■ [¶ 10]  Although Chris Bjorneby knew a fire was occurring, the trial judge determined the jury had heard evidence from which it had to be determined whether damage to the potatoes was "substantially certain to occur." The court found:

> In terms of the known event, the situation, there's no question that their fire was in existence at the time of the call. It was in [a] separate building. As I recall, testimony was that they thought they had it under control which unfortunately and sadly was not true, it became a significant loss. And the potatoes were in a separate building from the building that was on fire, brand new building that supposedly was sealed. It turned out that wasn't the truth.
>
> The Jury, I don't know, they could have determined that because of the separate location of the potatoes, separate building that's supposedly sealed building, the circumstances I have just gone through that it was not—that it was a fortuitous situation. That it wasn't a known loss or event to use that term now.

We agree with the district court. A factual issue—whether Bjorneby had knowledge a loss had occurred or was substantially likely to occur—precluded the district court from granting judgment as a matter of law.

### B

■■■ [¶ 11]  We also conclude Nodak's argument that Hurst was not negligent as a matter of law is without merit. Nodak argues the evidence presented at

trial leaves no factual dispute concerning whether Hurst was negligent; it contends he did not breach his duty of care, as a matter of law, because he acted in good faith and followed the Bjornebys' instructions. Insurance agents have a duty to "exercise the skill and care which a reasonably prudent person engaged in the insurance business would use under similar circumstances. This duty is ordinarily limited to the duties imposed in any agency relationship to act in good faith and follow instructions." *Rawlings v. Fruhwirth*, 455 N.W.2d 574, 577 (N.D.1990). Chris Bjorneby testified he instructed Hurst to ensure all of the potatoes in storage would be insured at all times by Nodak Mutual. The jury heard Hurst testify that bin capacity insurance was available. That insuring method would have covered all of the potatoes in storage. Yet, the Bjornebys were not utilizing bin capacity coverage at the time of the fire. The jury could have determined Hurst was negligent because he failed to utilize this method of insurance and thus did not follow the Bjornebys' instruction to insure all of the potatoes in storage all of the time. We conclude Nodak's argument, that Hurst was not negligent as a matter of law, is unpersuasive. There is an evidentiary basis to support a finding that Hurst failed to follow Chris Bjorneby's instruction to ensure all of his potatoes in storage were insured. While we do not know whether this was, in fact, the jury's determination, we will not overturn its verdict based on this uncertainty.

[¶ 12] The verdict rendered by the jury was: "We, the Jury impaneled and sworn in the above entitled action, find in favor of the Plaintiffs and against the Defendants and assess the Plaintiffs' damages in the sum of Three Hundred Fifty Six Thousand Dollars...." Rule 49, N.D.R.Civ.P., allows the district court to "require a jury to return only a special verdict in the form of a special written finding on each issue of fact." In this case, neither party asked for a special verdict to determine the basis for holding the defendants liable, together or individually. Neither Nodak nor Hurst objected to the general verdict form. We exercise "limited review of jury findings." *Vanover v. Kansas City Life Ins. Co.*, 553 N.W.2d 192, 197 (N.D.1996) (quoting *Schutt v. Schumacher*, 548 N.W.2d 381, 382 (N.D. 1996)). And we uphold jury verdicts when possible. *See e.g. Olander Contracting Co. v. Gail Wachter Invs.*, 2002 ND 65, ¶ 37, 643 N.W.2d 29. With the unobjected-to general verdict, it is impossible to determine on which basis the jury assigned liability. Because it cannot be held that neither basis would support the jury's verdict, the district court's decision not to grant judgment as a matter of law was correct.

### III

[¶ 13] Nodak also argues the district court erred when it denied their motion for a new trial because the evidence was insufficient to support the jury's verdict.

> The decision to grant or deny a new trial rests entirely within the discretion of the trial court. Our standard of review on appeal from a denial of a motion for a new trial is limited to a determination of whether or not the trial court manifestly abused its discretion.

*Wilson*, 311 N.W.2d at 14 (citations omitted). Again, it is not clear which theory of liability the jury based its decision on because the jury was issued a general verdict form. The jury may have concluded Nodak breached a contract to insure the potatoes. Or it may have decided Hurst was negligent by not ensuring the potatoes in storage were insured. In any case, con-

flicting evidence concerning both theories of liability was presented. After reviewing the transcript, we cannot say the district court manifestly abused its discretion when it denied Nodak's motion for a new trial.

## IV

[¶ 14] We affirm the district court's order denying Nodak Mutual and Hurst's motion for judgment as a matter of law and their motion for a new trial.

[¶ 15] GERALD W. VANDE WALLE, C.J., JAY A. SCHMITZ, D.J., DALE V. SANDSTROM and DANIEL J. CROTHERS, JJ., concur.

[¶ 16] The Honorable JAY A. SCHMITZ, D.J., sitting in place of McEVERS, J., disqualified.